IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES ARTHUR ROSS,

Plaintiff,

v.

TYLER BLEWETT *et al.*,

Defendants.

Case No. 2:20-cv-01338-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff James Arthur Ross ("Ross") is a self-represented litigant in the custody of the Oregon Department of Corrections ("ODOC"), currently housed at Two Rivers Correctional Institution ("TRCI"). Before the Court is Ross's fifth motion for a preliminary injunction. (ECF No. 190.) In his motion, Ross requests that the Court order ODOC to implement and enforce additional COVID-19 preventative measures at TRCI. All parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636.[1] For the reasons discussed herein, the Court denies Ross's motion.

[1] Ross consented to the jurisdiction of a magistrate judge on January 31, 2023. (ECF No. 102.) While Ross's current motion was pending, Ross challenged the validity of his consent (*see*

## BACKGROUND

On August 10, 2020, Ross filed this action against (now former) TRCI Superintendent Tyler Blewett, (now former) Oregon Governor Kate Brown, (now former) ODOC Director Colette Peters, and several other ODOC officials and employees (together, "Defendants"), alleging that Defendants violated his constitutional rights by failing to protect him from COVID-19. (*See* Compl., ECF No. 2.)

Ross filed the present motion for a preliminary injunction on March 15, 2024, alleging that TRCI officials were putting the health and lives of adults in custody ("AICs") at risk by failing to take preventive measures against the spread of COVID-19. (*See* Pl.'s Mot. Prelim. Inj. ("Pl.'s Mot.") at 2, ECF No. 190.) Ross alleged that ODOC was taking only reactionary measures once COVID-19 was already present, which was exposing AICs to a risk of irreparable harm in violation of their Eighth Amendment rights. (*See generally* Pl.'s Mot.)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). The elements of the test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("For

---

ECF No. 209), but the district judge confirmed the validity of his consent by order dated October 2, 2024. (*See* ECF No. 248.)

example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits."). "When the government is a party, [the] last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

**B. Mandatory Injunction**

A "mandatory injunction orders a responsible party to take action" and "is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (simplified). The "already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction.'" *Innovation L. Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)).

**C. Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") imposes additional restrictions on a court's ability to grant injunctive relief. Any such "[1] relief must be narrowly drawn, [2] extend no further than necessary to correct the harm the court finds requires preliminary relief, and [3] be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). The PLRA requires that courts "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity[.]" *Id.*

///

///

///

///

///

## II. ANALYSIS

In his motion, Ross asks the Court to order ODOC personnel to implement the following measures:

> 1) Performing close-contact-tracing and testing to identify all AICs and staff alike whom are infected with COVID-19;
>
> 2) Quarantine those AICs whom test positive to their cells for a period of time where they are no longer deemed by health standards as infectious;
>
> 3) Do not allow staff whom are infected to come to work until after a period of time that they are deemed by health standards as no longer infectious;
>
> 4) Do not allow AICs whom are infected to report to work until after a period of time that they are deemed by health standards as no longer infectious;
>
> 5) Do not allow AICs whom are deemed close-contacts to report to work until after a period of time that they are deemed by health standards as no longer infectious;
>
> 6) Order all staff whom are close-contacts and whom work or enter housing units that are potentially infected hot spots for CO[VID]-19, to wear masks and proper PPE while they are in the facility and to prevent the spread of COVID-19 throughout the facility, . . . [and]
>
> 7) Order the Defendants to implement and maintain some standard preventive measures as a way-of-life-in-the COVID-19-era and as identified throughout this motion.

(Pl.'s Mot. at 12.) Defendants responded to Ross's motion by arguing that TRCI is complying with all current Centers for Disease Control and Prevention ("CDC") recommendations and that the risks associated with COVID-19 are not currently significant enough to warrant court intervention. (*See generally* Defs.' Resp., ECF No. 198.)

The Court must evaluate the *Winter* factors to determine if Ross has established the requirements for preliminary injunctive relief: (1) likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) the balance of equities, and (4) the public interest. *See Winter*, 555 U.S. at 20. In addition, because Ross is requesting a mandatory injunction, the Court must also conclude that "the law and facts *clearly favor* [his] position[.]"

*Innovation L. Lab*, 310 F. Supp. 3d at 1157 (quoting *Garcia*, 786 F.3d at 740).[2] The Court finds that Ross has not satisfied the requirements for preliminary injunctive relief.

**A. Likelihood of Success on the Merits**

Ross alleges that Defendants have acted with deliberate indifference to a substantial risk of serious harm in violation of the Eighth Amendment by failing to implement and enforce effective COVID-19 preventative measures. (Pl.'s Mot. at 3.)

"A public official's 'deliberate indifference to a prisoner's serious illness or injury' violates the Eighth Amendment ban against cruel punishment." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). A plaintiff must establish that he was "confined under conditions posing a risk of 'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care." *Id.* (citing *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)). "Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Id.*

**1. Objective Prong**

Consistent with the above authorities, the Court must determine if Ross is currently confined under conditions posing a risk of sufficiently serious harm.

Defendants cite CDC guidance and statistics in support of their argument that currently "COVID-19 is less likely to result in severe disease than earlier in the pandemic because of

[2] The Ninth Circuit also provides an alternative preliminary injunctive relief test—the "serious questions" test—but the Court finds that Ross does not meet the requirements of the "serious questions" test here. *See All. for the Wild Rockies*, 632 F.3d at 1131-32 (holding that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met").

greater immunity from vaccines and previous infections and greater treatment availability." (Defs.' Resp. at 4-5) (citation omitted); *see also* Centers for Disease Control & Prevention, *CDC Updates and Simplifies Respiratory Virus Recommendations* (updated Mar. 1, 2024), https://perma.cc/S5LD-6SG2 ("CDC's updated guidance reflects how the circumstances around COVID-19 in particular have changed. While it remains a threat, today it is far less likely to cause severe illness because of widespread immunity and improved tools to prevent and treat the disease."). Defendants present evidence that "while people are still contracting Covid-19, the potential for serious adverse outcomes, including hospitalization and death, has sharply declined, thus warranting [the] CDC's classification of Covid-19 as similar to influenza or RSV." (Defs.' Resp. at 6) (citation omitted). Defendants also present evidence that people who have been previously infected and are vaccinated—such as Ross—are "better protect[ed] with longer durability against severe illness compared to immunity from vaccination or infection alone." (*Id.* at 7) (citation omitted).

The Court has previously held that AICs confined under conditions exposing them to a heightened risk of COVID-19 satisfied the objective prong of the analysis. *See, e.g.*, *Hanna v. Peters*, No. 2:21-cv-00493-SB, 2022 WL 833165, at *3 (D. Or. Mar. 21, 2022) (finding that "[i]n light of public health guidance . . . inconsistent or improper masking while in the close vicinity of AICs demonstrates deliberate indifference to a substantial risk of serious harm to AICs"); *see also Maney v. Brown*, 464 F. Supp. 3d 1191, 1209 (D. Or. 2020) (finding that the nature and conditions of the plaintiffs' confinement during the COVID-19 pandemic posed "a risk of objectively serious harm").

Since that time, however, circumstances have changed. The percentage of the population that is vaccinated has increased, personal protective equipment ("PPE") and testing have become

widely available, and the number of reported cases, hospitalizations, and deaths related to COVID-19 have decreased significantly. (*See* Defs.' Resp. at 4, "Data analyzed by CDC shows that Covid-19 hospitalizations have decreased over time and are now in line with hospitalization rates for the flu and RSV.") (citation omitted). Indeed, TRCI experienced only four confirmed positive COVID-19 cases in the nearly twelve months preceding the briefing on Ross's motion. (*See* Decl. Theron Rumsey ("Rumsey Decl.") ¶ 9, "Since January 1, 2024, [three] AICs have tested positive for COVID-19 at TRCI, including the two AICs mentioned in plaintiff's emergency motion for preliminary injunction.", ECF No. 200; Decl. Cynthia Dieter ("Dieter Decl.") ¶ 6, "In 2023, TRCI had seven positive COVID-19 cases. Six of those cases occurred in March and one occurred in November.", ECF No. 199.)

Other courts have rejected similar claims in recent years on the ground that COVID-19 no longer presents the same serious risks to AICs as in the early years of the pandemic.[3] *See, e.g.*, *Harris v. Hogan*, No. 1:21-cv-00298, 2024 WL 1580186, at *8 (D. Md. Apr. 11, 2024) ("Because of the change in circumstance surrounding the Covid-19 pandemic, the mere potential of exposure to the virus does not suffice to satisfy the first requirement of an Eighth Amendment conditions of confinement claim."); *Green v. Caron*, No. 3:22-cv-01397, 2023 WL 6809620, at *3 (D. Conn. Oct. 16, 2023) ("[I]t is not established that [the medically vulnerable plaintiff]

---

[3] Ross argues that his requested relief is "not of real difference than the preliminary relief granted [in] *Hanna v. Peters*[.]" (Pl.'s Mot. at 12.) This Court granted preliminary injunctive relief in that case in March 2022, at a time when the Oregon and federal emergency orders were still in effect and COVID-19 infection rates were elevated. (*See* National Emergencies Act, Pub. L. No. 118-3, 137 Stat. 6 (2023) (terminating the COVID-19 national emergency on April 10, 2023); Exec. Order No. 22-03 (terminating Oregon's COVID-19 state of emergency effective April 1, 2022); (Defs.' Resp. at 4.) ("As compared to January 2022, at the peak of the initial Omicron wave, weekly hospital admissions for Covid-19 have decreased by more than 75% and deaths by more than 90%.") (citation omitted). As discussed above, the risks associated with COVID-19 are different today.

remains at risk of serious harm in light of population immunity due to vaccinations which has substantially abated the rate of infection and risks associated with the COVID-19 illness."); *see also Wilson v. Ponce*, No. 2:20-cv-04451, 2022 WL 2155119, at *4-5 (C.D. Cal. Feb. 2, 2022) (granting summary judgment on the plaintiffs' Eighth Amendment COVID-19 exposure claim and finding that the plaintiffs failed to satisfy the objective prong because, *inter alia*, "the historical data of low infection rates overrides any claim that Petitioners are being subjected to a risk that today's society would not tolerate").

Accordingly, Ross has failed to establish that the law "clearly favors his position" that COVID-19 currently poses a sufficiently serious risk of harm to support his Eighth Amendment claim.

**2. Subjective Prong**

"The subjective component requires [AICs] to show that the officials had the culpable mental state, which is deliberate indifference to a substantial risk of serious harm." *Clement*, 298 F.3d at 904 (simplified). "Deliberate indifference" is established only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,'" and "prison officials who act reasonably cannot be found liable[.]" *Farmer*, 511 U.S. at 844-45 (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). "Mere indifference, negligence, . . . medical malpractice[, or e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) (simplified); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) ("A showing of

medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004))).

Defendants report that ODOC is currently employing the following prevention strategies at TRCI, in accordance with CDC guidance: (1) providing vaccinations, (2) providing everyday hygiene supplies such as soap and water, and hand sanitizer, (3) cleaning frequently touched surfaces, (4) providing healthcare, and (5) providing space for AICs with COVID-19 to quarantine. (Defs.' Resp. at 9) (citation omitted).

Ross argues that Defendants are only implementing reactionary measures in response to confirmed COVID-19 cases, and that they fail to implement any meaningful preventative measures. (Pl.'s Mot. at 5-6.) Specifically, Ross argues that contracting COVID-19 can still cause serious harm for vaccinated AICs; the cleaning supplies ODOC provides are ineffective; the cleaning practices ODOC employs are inadequate; AICs face consequences for reporting COVID-19 symptoms which disincentivizes them from accurately reporting their illnesses; the preventive measures ODOC employs are "haphazardly imposed"; and ODOC does not adequately communicate to AICs regarding COVID-19 outbreaks in a way that allows AICs effectively to use available preventative measures to protect themselves. (*See id.* at 1-9.)

Notably, however, Ross does not dispute that Defendants are providing AICs with several meaningful measures to help protect themselves from COVID-19, including masks, vaccines, testing, and quarantine space. (*See generally* Pl.'s Resp.) Ross further acknowledges that, in response to the two positive COVID-19 cases he referenced in his motion, Defendants required AICs in the impacted housing units to wear masks any time they left their unit. (Pl.'s Mot. at 3-4.) Although Ross takes issue with Defendants' delay in implementing a mask mandate and the correctional officers' inconsistent masking during that time (*id.* at 3-6), Ross has not

demonstrated that Defendants are currently acting with deliberate indifference to a substantial risk of serious harm, and therefore he is unlikely to succeed on his Eighth Amendment claim. *See, e.g.*, *Wilson*, 2022 WL 2155119, at *6 ("Petitioners' request to implement surveillance testing in addition to contact tracing testing amounts to a mere difference of reasonable medical opinions, which cannot establish deliberate indifference as a matter of law.") (citation omitted); *Fields v. Sec'y of CDCR*, No. 2:21-cv-00548, 2022 WL 2181997, at *6 (E.D. Cal. June 16, 2022) ("Plaintiff's wish for more rigorous protocols, and/or his preference to be single-celled . . . due to the pandemic, are insufficient to plead deliberate indifference under the Eighth Amendment."), *report and recommendation adopted*, 2022 WL 4124865 (E.D. Cal. Sept. 9, 2022).

**3. Conclusion**

For these reasons, the Court finds that Ross has failed to establish that he is likely to succeed on the merits of his Eighth Amendment claim or that the law and facts clearly favor his position.

**B. Likelihood of Irreparable Harm**

The Court's analysis could end there. *See Garcia*, 786 F.3d at 740 ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements].") (simplified). However, the Court examines the remaining *Winter* factors.

The second *Winter* factor "requires plaintiffs . . . to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (noting that the "possibility" of irreparable harm is insufficient). Ross argues that Defendants' inadequate responses to COVID-19 are subjecting him to an increased risk of contracting the virus again, which could cause him to suffer irreparable harm resulting in substantial long term and possibly permanent harm. (Pl.'s Mot. at 10.)

The record reflects that Ross has been vaccinated, and has access to testing, hygiene products, and masks that allow him to protect himself against COVID-19.[4] The lower probability that Ross will again contract COVID-19 is demonstrated by the fact that TRCI experienced only four confirmed positive COVID-19 cases in the nearly twelve months preceding the briefing on Ross's motion. (*See* Rumsey Decl. ¶ 9, "Since January 1, 2024, [three] AICs have tested positive for COVID-19 at TRCI, including the two AICs mentioned in plaintiff's emergency motion for preliminary injunction."; Dieter Decl. ¶ 6 "In 2023, TRCI had seven positive COVID-19 cases. Six of those cases occurred in March and one occurred in November.") Indeed, Ross filed his motion for a preliminary injunction on March 15, 2024—nearly a year ago—and Ross has not reported that he has contracted COVID-19 during the lengthy interim.

In light of the higher level of immunity from vaccines, the widely available PPE, and the greater treatment options now available, the Court finds that Ross has failed to establish that he is likely to suffer irreparable harm absent the requested preliminary injunctive relief or that the law and facts clearly favor his position.

**C. Balance of Equities and Public Interest**

On the one hand, preventing the spread of COVID-19 in ODOC facilities and the broader community remains important. On the other hand, the Supreme Court has cautioned "that federal courts must tread lightly when it comes to questions of managing prisons, particularly state prisons." *Woodford v. Ngo*, 548 U.S. 81, 94 (2006); *see also Meachum v. Fano*, 427 U.S. 215,

[4] Ross notes that "masks do not prevent a person from becoming infected[, r]ather, they help prevent a person whom is or may be infected, from spreading it to others." (Pl.'s Reply Defs.' Resp. at 37, ECF No. 233.) According to the CDC, "[w]hen worn by a person with an infection, masks reduce the spread of the virus to others [and] . . . can also protect wearers from breathing in infectious particles from people around them." Centers for Disease Control & Prevention, *Masks and Respiratory Viruses Prevention* (updated Mar. 1, 2024), https://perma.cc/ZXL3-TZK6.

228-29 (1976) (warning against court involvement in "the day-to-day functioning of state prisons and involv[ing] the judiciary in issues and discretionary decisions that are not the business of federal judges").

The Court finds that the public interest and equities factors currently balance in favor of leaving the management of COVID-19 in state prisons to the state. *See Swain*, 961 F.3d at 1293 ("[W]hile it doubtlessly advances the public interest to stem the spread of COVID-19, at [the correctional institution] and everywhere, the same public interest just as doubtlessly favors a proper allocation of public-health resources—an allocation that politically accountable (and often local) officials are best equipped to make.") (citations omitted).

**D. Conclusion**

Weighing all of the *Winter* factors, the Court concludes that Ross has not satisfied any of the requirements for preliminary injunctive relief.

**CONCLUSION**

For the reasons stated, the Court DENIES Ross's motion for a preliminary injunction (ECF No. 190).

**IT IS SO ORDERED.**

DATED this 3rd day of February, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge