IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES ARTHUR ROSS,

          Plaintiff,

      v.

TYLER BLEWETT *et al.*,

          Defendants.

Case No. 2:20-cv-01338-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

In August 2020, Plaintiff James Ross ("Ross") filed this civil rights action against the State of Oregon, former governor Kate Brown ("Governor Brown"), Colette Peters, Heidi Steward, Mike Gower, Mark Nooth, Rob Persson, Patrick Allen ("Allen"), Ken Jeske, Joe Bugher, Garry Russell, Shawn Haywood, Jennifer Starbuck, Lori Hensel, Coordinators Snyder, Moore, and Chavez, Tyler Blewett, Erin Reyes, Theron Rumsey, Captains Archer, Enriquez, and D. Herron, Amy Wray, D. Hunter, Correctional Officers Eric Neilsen and Wheelan, Arnell Eynon, and Harry Rossi (together, "Defendants").

Now before the Court is Defendants' motion to dismiss Ross's Fourth Amended Complaint and Allen's joinder thereto and separate motion to dismiss. (Defs.' Mot. Dismiss Pl.'s

PAGE 1 – OPINION AND ORDER

Fourth Am. Compl. ("Defs.' Mot."), ECF No. 220;[1] Allen's Joinder Defs.' Mot. Dismiss Pl.'s Fourth Am. Compl. ("Allen's Mot. Dismiss"), ECF No. 222; *see also* Defs.' Combined Reply Supp. Mot. Dismiss Pl.'s Fourth Am. Compl., ECF No. 290; Allen's Notice Joinder Reply, ECF No. 292; Bugher's Notice Joinder Reply, ECF No. 295.) For the reasons that follow, the Court grants Defendants' and Allen's motions to dismiss.[2]

## BACKGROUND[3]

Ross is an adult in custody ("AIC") at Two Rivers Correctional Institution ("TRCI"). (Fourth Am. Compl. ("FAC") ¶ 3, ECF No. 196.) Ross alleges that Defendants failed to protect him from exposure to COVID-19. (*Id.* at 2-3.) Ross was infected with COVID-19 and continues to suffer from long-term COVID-19 side effects, including but not limited to brain fog, loss of smell and taste, depression, and loss of muscle mass. (*Id.* ¶ 3.)

Ross also alleges that Defendants retaliated against him for filing grievances about COVID-19 conditions by restricting and denying his access to the law library, medical treatment, and grievances, and by forcing him to work in unsafe environments and subjecting him to repeated prison transfers. (*Id.*) Ross alleges that Defendants' limitation of his access to the TRCI

---

[1] Defendants ask the Court to take judicial notice of court filings in this and other federal cases. (Defs.' Mot. at 17-19.) The Court takes judicial notice of these materials because court dockets and filings are proper subjects of judicial notice. *See Luckey v. Mitchell*, No. 22-16556, 2023 WL 6389399, at *1 n.1 (9th Cir. Oct. 2, 2023) (courts dockets); *Bykov v. Rosen*, 703 F. App'x 484, 487 (9th Cir. 2017) (related cases).

[2] In his response to Defendants' motion to dismiss, Ross moves for partial summary judgment on some of Defendants' affirmative defenses. (*See generally* Pl.'s Combined Resp. Defs.' Mots. Dismiss Joinder Req. Partial Summ. J. ("Pl.'s Resp."), ECF No. 285.) The Court denies as premature Ross's motion for partial summary judgment. *See* FED. R. CIV. P. 56(d).

[3] "Except where otherwise stated, these facts are taken from [the plaintiff]'s complaint and are accepted as true." *Hebrard v. Nofziger*, 90 F.4th 1000, 1004 n.1 (9th Cir. 2024) (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 n.2 (9th Cir. 1992)).

PAGE 2 – OPINION AND ORDER

library resulted in the loss of an unspecified appellate procedure in a child custody matter and delays in the litigation of this case. (*Id.* ¶¶ 3, 27.)

**LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021) (citation omitted), and "[self-represented] litigants should be treated with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986)). As the Ninth Circuit has explained, there is a "good reason that [courts] afford leeway to [self-represented] parties, who appear without counsel and without the benefit of sophisticated representation: 'Presumably unskilled in the law, the [self-represented] litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel.'" *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)).

PAGE 3 – OPINION AND ORDER

There are, however, limits on the leeway that courts afford to self-represented litigants. For example, although courts "construe pro se pleadings liberally, . . . [courts] 'may not supply essential elements of the claim that were not . . . pled[.]'" *Owen v. City of Hemet*, No. 21-55240, 2022 WL 16945887, at *1 (9th Cir. Nov. 15, 2022) (first citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); and then quoting *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

## DISCUSSION

### I.    SUBJECT MATTER JURISDICTION

#### A.    OTCA Notice

Defendants argue that the Court should dismiss Ross's negligence claim because he did not comply with the Oregon Tort Claims Act's ("OTCA") notice requirements. (Defs.' Mot. at 21-23.) Specifically, Defendants argue that Ross alleges he tested positive for COVID-19 on January 11, 2021, but he did not provide formal notice of his negligence claim and did not amend his operative complaint until more than 180 days after his alleged injury. (*Id.*)

The OTCA provides, in relevant part,

(1)    No action arising from any act or omission of a public body or an officer, employee or agent of a public body . . . shall be maintained unless notice of claim is given as required by this section.

(2)    Notice of claim shall be given within the following applicable period of time . . . :

(a)    For wrongful death, within one year after the alleged loss or injury.

(b)    For all other claims, within 180 days after the alleged loss or injury.

(3)    Notice of claim required by this section is satisfied by:

(a)    Formal notice of claim as provided in subsections (4) and (5) of this section;

(b)    Actual notice of claim as provided in subsection (6) of this section;

PAGE 4 – OPINION AND ORDER

       (c)      Commencement of an action on the claim by or on behalf of the claimant within the applicable period of time provided in subsection (2) of this section; or

       (d)      Payment of all or any part of the claim by or on behalf of the public body at any time.

(4)      Formal notice of claim is a written communication from a claimant or representative of a claimant containing:

       (a)      A statement that a claim for damages is or will be asserted against the public body or an officer, employee or agent of the public body;

       (b)      A description of the time, place and circumstances giving rise to the claim, so far as known to the claimant; and

       (c)      The name of the claimant and the mailing address to which correspondence concerning the claim may be sent.

OR. REV. STAT. § 30.275. "[A]n important purpose of the notice requirement is 'to give the public body timely notice of the tort and allow its officers an opportunity to investigate the matters promptly and ascertain all the necessary facts.'" *Moore v. Portland Pub. Sch.*, 537 P.3d 544, 553 (Or. Ct. App. 2023) (quoting *Urb. Renewal Agency of City of Coos Bay v. Lackey*, 549 P.2d 657, 660 (Or. 1976)).

Ross did not address Defendants' representation that he failed to provide formal notice of his intention to file state tort claims within 180 days of learning of his COVID-19 infection on January 11, 2021. (*See generally* Pl.'s Resp.) Although the OTCA provides that commencement of an action alleging a state tort claim may satisfy its notice requirement, the record reflects that Ross did not include a negligence claim in his original complaint (filed on August 10, 2020), nor his amended complaint (filed on October 5, 2020). In any event, both complaints predated his alleged injury (i.e., his COVID-19 infection). Further, although Ross included a negligence claim

PAGE 5 – OPINION AND ORDER

in his second amended complaint based on his COVID-19 infection, he did not file his second amended complaint until February 22, 2023, more than 180 days after his alleged injury.[4]

Nevertheless, this Court held in *Maney* that the putative class members were not required to file individual tort claim notices to satisfy the OTCA's notice requirements with respect to the negligence claim alleged in the *Maney* class action complaint. *See Maney v. Oregon*, 729 F. Supp. 3d 1087, 1183 (D. Or. 2024) ("The Court concludes that Plaintiffs' early pleadings sufficiently raised Plaintiffs' 'claims,' given that term's broad meaning. Plaintiffs filed this putative class action in April 2020. Plaintiffs alleged an Eighth Amendment claim based on Defendants' response to the COVID pandemic. On June 26, 2020, Plaintiffs amended their complaint to add a claim for negligence, similarly based on Defendants' response to COVID in ODOC facilities. In light of the timing and substance of Plaintiffs' original and amended complaints, the Court concludes that Plaintiffs presented the relevant claims within the statutory time period[.]") (simplified), *aff'd*, No. 24-2715, 2025 WL 1794110 (9th Cir. June 30, 2025).

Accordingly, the Court finds that Ross's OTCA notice clock was tolled until he opted out of the *Maney* class action. *Cf. DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1097 (9th Cir. 2024) ("[F]or purposes of *American Pipe* tolling, 'the claimed members of the class [stand] as parties to the suit until and unless' they opt out or class certification is denied." (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551 (1974))), *cert. denied*, 145 S. Ct. 1426 (2025). The

---

[4] In response to the COVID-19 pandemic, the Oregon State Legislature passed H.B. 4212, which included a tolling provision to suspend deadlines to provide notice or file claims during the COVID-19 state of emergency. *See Phelps v. Wellpath Mgmt., Inc.*, 641 F. Supp. 3d 966, 975 (D. Or. 2022) (citing H.B. 4212, 80th Leg., 1st Spec. Sess. (Or. 2020)). Even if H.B. 4212 tolled Ross's OTCA notice period, "[t]he text and context of . . . H.B. 4212 indicate a clear legislative will to extend the [notice period] in Oregon through—but not past—December 31, 2021." *Id.* Thus, any such tolling did not salvage Ross's negligence claim because he did not provide notice of his claim until he filed his second amended complaint on February 22, 2023.

specific date on which Ross opted out does not appear to be part of the record in this case, but Ross acknowledged on November 15, 2022 in a motion for appointment of counsel that he had recently opted out of the *Maney* class action. (*See* Pl.'s Mot. Appointment Counsel at 1, ECF No. 72, "I have 'opted-out' and I am currently working on amending my complaint.")

The Court finds that if Ross's 180-day OTCA notice clock was triggered on or about November 15, 2022 when he opted out of the *Maney* class action, he timely provided notice of his negligence claim by filing his second amended complaint on February 22, 2023. As a result, the Court denies Defendants' motion to dismiss Ross's negligence claim for failure to provide timely OTCA notice without prejudice to renewing the notice argument if (i) Ross opted out of the *Maney* class action more than 180 days before filing his second amended complaint or (ii) Defendants present authority that the OTCA's notice period is not tolled during the pendency of a class action under these circumstances.

### B.    Standing

Defendants argue that to the extent Ross's "claims are premised on conduct [that] did not impact TRCI, occurred at prisons other than TRCI, or that occurred at TRCI but did not impact him, those claims should be dismissed." (Defs.' Mot. at 19.)

Ross did not style his complaint as a class action. (*See generally* FAC.) Nevertheless, Ross's operative complaint contains several allegations concerning the Oregon Department of Corrections' ("ODOC") general response to the COVID-19 pandemic. (*See, e.g.*, FAC ¶ 66(q), alleging that ODOC failed to establish written protocols for COVID-19 ventilation improvements or implement Centers for Disease Control recommendations into its policies; *id.* ¶ 73, alleging that Defendants failed to implement and enforce masking, quarantine, and non-mixing policies at each ODOC facility.) A self-represented plaintiff may not represent other plaintiffs in litigation. *See Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) ("[A]

PAGE 7 – OPINION AND ORDER

non-lawyer 'has no authority to appear as an attorney for others than himself.'" (quoting *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1966))).

Because Ross may not represent the interests of other AICs without counsel, the Court dismisses Ross's allegations to the extent that they allege harm to other people. *See White v. Geren*, 310 F. App'x 159, 160 (9th Cir. 2009) ("The district court properly dismissed [the plaintiff's] class action claims because [the plaintiff], proceeding *pro se*, was not an adequate class representative." (first citing FED. R. CIV. P. 23(a)(4); and then citing *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966))); *Abel v. Alameda County*, No. 3:07-cv-03247-MJJ-PR, 2007 WL 3022252, at *1 (N.D. Cal. Oct. 13, 2007) ("*Pro se* prisoner plaintiffs may not bring class actions. They are not qualified to act as class representatives as they are unable to fairly represent and adequately protect the interests of the class.") (citations omitted).

## II.    PLEADING DEFICIENCIES

### A.    COVID-19 Claims

#### 1.    Personal Participation

Defendants argue that Ross improperly relies on group pleading and fails plausibly to allege the personal involvement of individual defendants. (Defs.' Mot. at 19-21, 33-36.) The Court agrees.

Generally, "liability under [Section] 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Accordingly, "[l]iability under [S]ection 1983 arises only upon a showing of personal participation by the defendant" in the deprivation alleged. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)); *see also King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (noting that "state officials are not subject to suit under Section 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights" (citing *Rizzo v. Goode*,

PAGE 8 – OPINION AND ORDER

423 U.S. 362, 377 (1976))). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194. Section 1983 therefore does not impose liability upon state officials for the acts of their subordinates. *See Taylor*, 880 F.2d at 1045 (noting that "[t]here is no respondeat superior liability under [S]ection 1983" (citing *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680-81 (9th Cir. 1984))).

Supervisory liability under Section 1983 instead arises "where the supervisor 'was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'" *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010) (quoting *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)). If a supervisor was not personally involved in the deprivation at issue, "[t]he requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury[.]" *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (simplified).

However, "liability may not be imposed based on a team effort theory that would allow the jury to lump all the defendants together, rather than require it to base each individual's liability on [the individual's] own conduct." *Peck v. Montoya*, 51 F.4th 877, 890 (9th Cir. 2022) (simplified). As a result, the Ninth Circuit has explained "that an actor may be deemed to have caused a plaintiff to be subjected to a constitutional violation, 42 U.S.C. § 1983, and thus to be an integral participant in the violation, only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the

defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Id.* at 891 (simplified).

Ross's allegations largely mirror (and often copy) allegations in the related *Maney* certified class action, from which Ross opted out. In *Maney*, the class plaintiffs alleged that a small group of high-level ODOC officials personally participated in the challenged policies that impacted AICs in all ODOC institutions. In this single-plaintiff case, Ross largely relies on the same ODOC-wide allegations against thirty individual defendants but does not include any specific allegations about each individual defendant's personal participation that violated his rights or resulted in his COVID-19 infection at TRCI. (*See generally* FAC.) Instead, Ross vaguely alleges that *every* individual defendant engaged in *every* challenged action underlying his Eighth Amendment and negligence claims, which is not plausible. (*See, e.g., id.* ¶¶ 107, 114.) As a result, the Court finds that Ross has not plausibly alleged that any individual defendant was personally involved in the alleged constitutional violations or negligence at TRCI and therefore grants Defendants' motion to dismiss Ross's Eighth Amendment and negligence claims.[5]

### 2.    Official Capacity Claims

Defendants argue that the Eleventh Amendment bars Ross's demand for damages against Defendants in their official capacities. (Defs.' Mot. at 21.)

"One of the requisite elements for stating a claim under [Section] 1983 is that the violation was committed by a 'person' acting under color of state law." *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). It is well settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491

---

[5] For these reasons, the Court does not reach the additional arguments for dismissal that Allen raises in his separate motion to dismiss. (*See generally* Allen's Mot. Dismiss.)

PAGE 10 – OPINION AND ORDER

U.S. at 71 (citation omitted); *see also Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself.") (citations omitted). As a result, the Eleventh Amendment bars official-capacity suits absent the state's waiver of sovereign immunity. *See Will*, 491 U.S. at 66, 71.

Ross alleges claims against each individual defendant in their individual and official capacities. (FAC ¶¶ 4-32.) To the extent Ross brings official capacity claims for damages against the individual defendants, the Court grants Defendants' motion to dismiss those claims with prejudice.

### 3.    PREP Act

Defendants argue that the Public Readiness and Emergency Preparedness Act ("PREP Act") precludes Ross's suit for damages over Governor Brown's vaccine prioritization decisions. (Defs.' Mot. at 37-39.) Ross responds that Governor Brown is not entitled to immunity under the PREP Act because the Ninth Circuit's decision so holding is not binding in this case. (Pl.'s Resp. at 93-96.)

In *Maney*, the Ninth Circuit held that under the PREP Act, Governor "Brown . . . [was] entitled to immunity from suit and liability with respect to [the p]laintiffs' vaccine prioritization damages claim." *Maney v. Brown*, 91 F.4th 1296, 1303 (9th Cir. 2024). Ross argues that the Court is not bound by the Ninth Circuit's guidance because *Maney* is "ongoing" and because the Ninth Circuit's ruling is not binding on the Court. Ross is mistaken. *See Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court bound by circuit authority . . . has no choice but to follow it, even if convinced that such authority was wrongly decided."); *see also United States v. Brown*, 720 F. Supp. 3d 1020, 1026 (D. Or. 2024) ("Generally, district courts in the Ninth Circuit are bound by the prior decisions of the Court of Appeals.") (simplified); *Jefferson*

PAGE 11 – OPINION AND ORDER

*v. Hendricks*, No. 3:21-cv-00959-HL, 2022 WL 867993, at *2 (D. Or. Feb. 1, 2022) (holding that "district courts have no choice but to follow circuit authority"), *findings and recommendation adopted*, 2022 WL 860945 (D. Or. Mar. 23, 2022).

The Ninth Circuit has already held that Governor Brown is entitled to immunity under the PREP Act for "vaccine prioritization damages claim[s.]" *Maney*, 91 F.4th at 1303; *see also Paschall v. Johal*, No. 1:24-cv-00154, 2026 WL 370121, at *2 (E.D. Cal. Feb. 10, 2026) (holding that "the Ninth Circuit held that the PREP Act foreclosed section 1983 litigation asserting an Eighth Amendment claim that state officials' decision to assign inmates a lower priority for COVID-19 vaccination than that assigned to correctional officers in an Oregon inmates' class action" (citing *Maney*, 91 F.4th at 1303)). Accordingly, the Court grants Defendants' motion to dismiss Ross's claim for alleged damages resulting from Governor Brown's vaccine prioritization program and dismisses his claim with prejudice.

### 4.    Quasi-Judicial Immunity

Defendants argue that Governor Brown is immune from suit for her exercise of commutation powers. (Defs.' Mot. at 39.) Ross responds that Governor Brown is not entitled to quasi-judicial "immunity for her deliberately indifferent early release program." (Pl.'s Resp. at 88-92.) The Court has already resolved this issue and therefore the Court grants Defendants' motion to dismiss on this ground and dismisses Ross's claim with prejudice. *See Maney*, 729 F. Supp. 3d at 1111 ("The Court concludes that Governor Brown's exercise of clemency similarly has a sufficiently close nexus to the adjudicative process to receive immunity.") (simplified).

### 5.    Legislative Immunity

Defendants argue that Governor Brown is entitled to legislative immunity for her decisions to open and close prisons. (Defs.' Mot. at 42-44.) Ross responds that Governor Brown is not entitled to legislative immunity because she "exercised a fundamentally *executive* function,

PAGE 12 – OPINION AND ORDER

not a legislative one[.]" (Pl.'s Resp. at 89.) Again, the Court has already resolved this issue and therefore grants Defendants' motion to dismiss on this ground and dismisses Ross's claim with prejudice. *See Maney*, 729 F. Supp. 3d at 1114-15 (holding that "[b]ecause the 2019 legislature had already set ODOC's budget, Governor Brown's role in utilizing empty facilities would have required a request for funding from the legislature[,]" and consequently, "legislative immunity protects Governor Brown from suit for damages relating to budget prioritization").

### B.      Access to Courts Claim

Ross alleges that Defendants violated his First Amendment rights by restricting his access to TRCI's law library, which interfered with his ability to litigate this case and a separate child custody proceeding in North Dakota. (FAC ¶¶ 116-21.) Defendants argue that they did not deny Ross adequate resources or actively interfere with his litigation and, in any event, Ross has failed to identify an actual injury resulting from such alleged interference. (Defs.' Mot. at 25-27.)

An AIC's right of access to courts is a "First Amendment right subsumed under the right to petition the government for redress of grievances." *Johnson v. Noack*, No. 3:16-cv-00443-SB, 2018 WL 3340876, at *3 (D. Or. July 6, 2018) (citation omitted). "The doctrine of standing requires an [AIC] to allege an 'actual injury' due to interference with the [AIC]'s right to access the courts." *Canales-Robles v. Peters*, 270 F. Supp. 3d 1230, 1236 (D. Or. 2017) (quoting *Lewis v. Casey*, 518 U.S. 343, 349-51 (1996)). "The 'actual injury' requirement means an [AIC] suing for denial of access to courts must allege that a 'nonfrivolous legal claim had been frustrated or was being impeded.'" *Id.* (quoting *Lewis*, 518 U.S. at 353).

Although AICs have a First Amendment right of access to courts, the "right is limited, however, to the filing of direct criminal appeals, habeas petitions, and civil rights actions." *Turley v. Laqunas*, No. 23CV231-LL-BLM, 2023 WL 2876151, at *4 (S.D. Cal. Apr. 10, 2023) (citing *Lewis*, 518 U.S. at 354). Child custody cases do not fall within these protected categories

PAGE 13 – OPINION AND ORDER

and therefore the Court grants Defendants' motion to dismiss Ross's interference claim on this ground. *See Christopher v. CDCR Sec'y*, No. 1:23-cv-00916-FRS, 2026 WL 369748, at *4 (E.D. Cal. Feb. 10, 2026) ("As a child custody case is not a direct criminal appeal, habeas petition, or civil rights action, [the p]laintiff's allegations do not state a cognizable claim for relief for violation of [the p]laintiff's right of access to courts."), *findings and recommendation adopted*, 2026 WL 657605 (E.D. Cal. Mar. 9, 2026); *Aguilar v. Lopez*, No. C 96-3147 SI, 1996 WL 557679, at *2 (N.D. Cal. Sept. 16, 1996) ("The right of access [to courts] does not extend to child custody cases.").

Ross further alleges that Defendants interfered with his right to access the courts with respect to this case by limiting his visits to the law library to three times per week. (FAC ¶ 119(c).) The Court finds that Ross has failed plausibly to allege an actual injury from Defendants' alleged denial of access to the law library. Although Ross alleges that Defendants' interference "resulted in many requests for extensions of time in this case" (FAC ¶ 119(c)), the Court granted Ross's motions for extensions of time. (*See* ECF Nos. 33, 36, 41, 43, 46, 48, 71, 84, 97, 137, 150, 160, 173, 185, 208, 219, 230, 243, 256, 258, 268.) Accordingly, Ross has failed plausibly to allege an actual injury from Defendants' alleged denial of access to the law library.[6] *See Taylor v. Salinas Valley State Prison*, 246 F. App'x 417, 418 (9th Cir. 2007) (affirming dismissal where the AIC had not demonstrated an actual injury resulting from denial of access to the law library); *Gosztyla v. Gruenwald*, No. 2:22-cv-1725 KJM CSK P, 2025 WL 457785, at

---

[6] Ross also alleges that Defendants' limitations of access to the law library caused him to lose his job and to be overlooked for other positions at TRCI (FAC ¶ 124(e)), but Ross has not plausibly alleged a nexus between Defendants' denial of access and his job loss. *See Williams v. Navarro*, No. 318CV01318DMSRBM, 2019 WL 2966314, at *4 (S.D. Cal. July 9, 2019) (holding that "there [were] no facts to suggest [the plaintiff's] ability to attack his sentence or conditions of confinement has been hindered due to [the plaintiff's] limited law library access"), *report and recommendation adopted*, 2019 WL 4934509 (S.D. Cal. Oct. 7, 2019).

PAGE 14 – OPINION AND ORDER

*11 (E.D. Cal. Feb. 10, 2025) ("Though plaintiff was denied access to the law library on several occasions, . . . to succeed on an access to the courts claim, plaintiff must demonstrate that he sustained an actual injury to a nonfrivolous or arguable underlying legal claim. Plaintiff has failed to demonstrate this. Instead, the undisputed facts establish that plaintiff frequently attended the law library and successfully filed a wide variety of documents in both state and federal court, litigating multiple actions simultaneously.") (simplified), *findings and recommendation adopted*, 2025 WL 832182 (E.D. Cal. Mar. 17, 2025), *appeal filed*, No. 25-2099 (9th Cir. Apr. 1, 2025); *Reyes v. Washburn*, No. 2:21-cv-01175-SB, 2023 WL 9470076, at *6 (D. Or. Oct. 31, 2023) (granting dismissal of the plaintiff's First Amendment access to courts claim for failure to allege an actual injury), *findings and recommend adopted*, 2024 WL 343481 (D. Or. Jan. 30, 2024).

### C.    Retaliation Claim

Ross alleges that Defendants unconstitutionally retaliated against him for filing grievances relating to COVID-19 conditions by limiting his access to the law library, terminating his prison job, exposing him to unsafe working conditions, and denying his grievances. (FAC ¶¶ 122-26.) Defendants argue that Ross has failed to state a claim for retaliation. (Defs.' Mot. at 31-37.)

"The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts." *Johnson v. Ryan*, 55 F.4th 1167, 1201 (9th Cir. 2022) (quoting *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017)). As the Ninth Circuit has explained, "[b]ecause purely retaliatory actions taken against [an AIC] for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005)).

PAGE 15 – OPINION AND ORDER

An AIC's "successful First Amendment retaliation claim . . . requires '(1) [a]n assertion that a state actor took some adverse action against [the AIC] (2) because of (3) that [AIC's] protected conduct, and that such action (4) chilled the [AIC's] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" *Long v. Sugai*, 91 F.4th 1331, 1339 (9th Cir. 2024) (quoting *Rhodes*, 408 F.3d at 567-68). In addressing "the fifth factor, the Supreme Court has cautioned that 'federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment, especially with regard to the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims'" *Id.* (quoting *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)).

The Court finds that Ross's First Amendment retaliation claims fail because he has not plausibly alleged any facts to suggest that Defendants acted with a retaliatory motive. *See Johnson*, 55 F.4th at 1201-02 ("To establish a retaliatory motive, an [AIC] 'must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct.'" (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009))). "To raise a triable issue as to motive, [the plaintiff] must offer 'either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive].'" *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon,* 283 F.3d 1070, 1077 (9th Cir. 2002)). The three types of circumstantial evidence include "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *Allen,* 283 F.3d at 1077.

Here, Ross vaguely alleges that Defendants retaliated against him due to his "assistance in the *Maney* Class, the *Hanna v. Peters* (Or. D. 2022) case, [his] filing of grievances, especially

PAGE 16 – OPINION AND ORDER

against the TRCI's law library and medical personnel as well as [his] own COVID-19 § 1983 Federal Lawsuit, specifically, this case at hand." (FAC ¶ 125.) However, Ross alleges no facts that plausibly suggest Defendants acted with any retaliatory motive. (*See generally id.* ¶¶ 122-26.) Accordingly, the Court grants Defendants' motion to dismiss Ross's First Amendment retaliation claims. *See Holman v. Sauceda*, No. 518CV00502DOCMAA, 2019 WL 8108742, at *9 (C.D. Cal. June 20, 2019) (holding that the plaintiff had not plausibly alleged that the defendants retaliated against him for his lawsuits and grievances by terminating his prison employment), *report and recommendation adopted*, 2019 WL 8108712 (C.D. Cal. Aug. 2, 2019); *Springfield v. Khalit*, No. 217CV2675JAMKJNP, 2019 WL 1745872, at *2 (E.D. Cal. Apr. 18, 2019) (holding that the plaintiff did not plausibly allege that the defendants retaliated against him by limiting access to the library).

### D. Injunctive Relief

Defendants argue that "[t]he Court should dismiss [Ross's] requests for injunctive relief to the extent that they concern his retaliation or access-to-the-courts claims because he has not stated a claim for relief on those claims." (Defs.' Mot. at 48-49.) In light of the Court's dismissal of Ross's retaliation and access to the courts claims, the Court grants Defendants' motion to dismiss Ross's claims for injunctive relief on this ground. *See Patterson v. Henry*, No. 3:23-cv-00961-SB, 2023 WL 7017835, at *3 (D. Or. Sept. 20, 2023) (granting the defendant's motion to dismiss the plaintiff's demand for injunctive relief), *findings and recommendation adopted*, 2023 WL 7019996 (D. Or. Oct. 24, 2023).[7]

///

---

[7] The Court also dismisses as moot Ross's claim for injunctive relief related to COVID-19 measures because changed circumstances have reduced the risks of COVID-19. (*See* Defs.' Mot. at 37.)

PAGE 17 – OPINION AND ORDER

### III.    MOTION TO STAY

Defendants argue that the Court should stay Ross's Eighth Amendment claims pending the outcome of the *Maney* appeal at the United States Supreme Court. (Defs.' Mot. at 51-53.) In light of the preliminary approval of the class action settlement in the related *Maney* class action and dismissal of the appeal, the Court denies Defendants' motion to stay.[8]

### CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion to dismiss (ECF No. 220), GRANTS Allen's motion to dismiss (ECF No. 222), and DISMISSES Ross's Fourth Amended Complaint. Although Ross has already had several opportunities to attempt to state a viable claim for relief in this case, he has not yet had the benefit of the Court's evaluation of his current claims.[9] As a result, Ross may file a Fifth Amended Complaint by August 13, 2026, if he is able in good faith to cure the pleading deficiencies discussed herein.

**IT IS SO ORDERED.**

DATED this 14th day of July, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[8] The preliminarily-approved settlement agreement provides that Defendants will pay class members (similarly situated to Ross): a base payment of $1,000; an "[e]arly infection enhancement" of $1,000 for a COVID-19 diagnosis or positive test before April 1, 2021 (i.e., prior to vaccine availability in ODOC facilities); and an "[e]xtended symptoms enhancement" of $2,000 for "[s]even or more days of documented COVID-19 symptoms, confirmed by ODOC medical record review[.]" (Mot. Prelim. Approval Class Action Settlement, *Maney v. Oregon*, ECF No. 682.)

[9] *See Green v. Volcano Harley-Davidson*, No. 3:24-cv-1509-SB, 2026 WL 194718, at *2 (D. Or. Jan. 26, 2026) (dismissing fraud claim with leave to amend where the plaintiff had "not yet had the benefit of understanding the pleading deficiencies concerning his fraud claim or an opportunity to address those deficiencies") (simplified), *reconsideration denied*, 2026 WL 812304 (D. Or. Feb. 23, 2026).

PAGE 18 – OPINION AND ORDER